**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1290

WARDS CORNER BEAUTY ACADEMY, a Virginia Corporation,

Plaintiff – Appellant,

v.

NATIONAL ACCREDITING COMMISSION OF CAREER ARTS & SCIENCES,

Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Mark S. Davis, Chief District Judge.  (2:16-cv-00639-MSD-LRL)

Argued:  March 20, 2019                          Decided:  April 30, 2019

Before KEENAN and DIAZ, Circuit Judges, and DUNCAN, Senior Circuit Judge.

Affirmed by published opinion.  Senior Judge Duncan wrote the opinion, in which Judge Keenan and Judge Diaz joined.

William A. Lascara, PENDER & COWARD, Virginia Beach, Virginia, for Appellant. Julia Kim Whitelock, GORDON REES SCULLY MANSUKHANI, LLP, Washington, D.C., for Appellee.

DUNCAN, Senior Circuit Judge:

Plaintiff-Appellant Wards Corner Beauty Academy ("WCBA") appeals the district court's dismissal of its case following a bench trial. After the National Accrediting Commission of Career Arts and Sciences ("NACCAS") withdrew WCBA's accreditation as a barbering and cosmetology academy, WCBA filed suit against NACCAS alleging due process violations in the accreditation proceeding and seeking injunctive and declaratory relief. On appeal, WCBA challenges the district court's dismissal of its due process claims based on three alleged violations: first, that one Commissioner had an impermissible pecuniary interest in the outcome of the decision; second, that NACCAS's alleged failure to follow its own conflict of interest rules violated WCBA's due process rights; and third, that the Commissioners reviewing WCBA's accreditation prejudged the decision by acting as both investigators and adjudicators. For the following reasons, we affirm.

I.

NACCAS is a non-profit corporation organized under the laws of Virginia. It is recognized by the United States Department of Education as a national accrediting agency, *see* 20 U.S.C. § 1099b(f), and is responsible for granting and reviewing accreditation for institutions such as WCBA.

WCBA is a cosmetology and barbering institution in Virginia. WCBA was first accredited in 1977 by NACCAS's predecessor, the Cosmetology Accrediting

2

Commission, and its accreditation was continuously renewed until 2014. This case arises from NACCAS's decision to withdraw WCBA's accreditation in 2014.

NACCAS maintains Rules of Practice and Procedure (the "NACCAS Rules") as well as Standards and Criteria that define both the process for schools to renew accreditation and the substantive criteria they must meet to maintain accreditation. Pursuant to these requirements, schools must maintain a benchmark graduation rate of at least fifty percent. Each accredited school must submit an annual report of aggregated student data to demonstrate compliance with the benchmark graduation rate. If NACCAS determines that a school has not met the benchmark graduation rate, the school must bring itself into compliance with the NACCAS Rules. Should a school fail to do so, NACCAS may take adverse action, including placing the school on probation or withdrawing the school's accreditation. A school may appeal such adverse action to an Appellate Review Panel.

In November 2014, WCBA submitted its 2013 Annual Report to NACCAS reporting a graduation rate below the fifty percent benchmark. NACCAS informed WCBA that it had twelve months to bring its graduation rate into compliance. WCBA submitted its 2014 Annual Report to NACCAS in the fall of 2015, at which point NACCAS determined that WCBA had failed to demonstrate a compliant graduation rate. Nonetheless, NACCAS permitted WCBA to submit supplemental information demonstrating that its graduation rate was in fact compliant. WCBA submitted this information in January 2016.

3

In February 2016, NACCAS held a week-long Commission Meeting at which the NACCAS Commission considered and voted upon numerous school actions, including WCBA's accreditation. A day or two before the Commission votes on a school action (e.g., WCBA's accreditation), its File Review Teams, each comprised of three Commissioners, independently investigate the school action in question and make a recommendation to the full Commission. As part of this process, File Review Teams consider written reports prepared by NACCAS's Compliance Department staff. NACCAS staff assigns case files to the File Review Teams, who do not know which school actions they will investigate until they meet on the designated day. After the File Review Teams submit their recommendations, the full Commission convenes to discuss and then vote on the various school actions.

At the February 2016 Commission Meeting, the Chairman of the Commission, Michael Bouman, presided over the Commission Meeting by calling the agenda items and moderating the discussion. Bouman also personally participated in reviewing WCBA's file as part of the File Review Team process. Typically, as Chairman, Bouman would not have been assigned to a File Review Team. Because one of the File Review Teams was missing a member, however, Bouman filled in as a substitute. Bouman's File Review Team was tasked with determining whether to recommend that the full Commission withdraw WCBA's accreditation.

Bouman was also the President, Chief Operating Officer ("COO"), and part owner of Empire Education Group, Inc. ("EEG"), which operated a school near WCBA.[1]  The district court later determined that at the time of the Commission Meeting, Bouman was unaware of a potential conflict between WCBA and EEG.  He had no prior dealings with WCBA, nor was he aware of the geographic proximity between the two schools.  Consequently, he did not recuse himself.

Upon reviewing the WCBA file, Bouman's File Review Team recommended that NACCAS withdraw WCBA's accreditation.  In doing so, Bouman personally signed the "action form" recommending that the full Commission vote to withdraw accreditation.  Subsequently, the full Commission considered WCBA's case and unanimously voted to withdraw WCBA's accreditation.  As Chairman, Bouman did not participate in the discussion before the full Commission, nor did he vote on the matter, though he was present in the room.  WCBA appealed the decision in May 2016 to an Appellate Review Panel, which affirmed the decision in October 2016.

WCBA then sued in federal district court, asserting that it was denied its common law right to due process in the NACCAS accreditation proceedings and requesting injunctive and declaratory relief.  Specifically, WCBA contended that Bouman's involvement in the proceedings--given his purported pecuniary interest in their outcome

---

[1] Bouman received financial remuneration for his involvement with EEG.  As President and COO, Bouman earned an annual salary of $260,000.  In addition, Bouman had on occasion received bonuses from EEG in previous years. He also owned less than one percent of EEG's stock through its employee stock program.

through his relationship with WCBA's competitor, EEG--violated WCBA's due process rights.

The case proceeded to a multi-day bench trial at which multiple witnesses, including Bouman, testified. In its comprehensive post-trial order, the district court denied WCBA's request for relief. It first determined that while WCBA's Norfolk school and EEG's Virginia Beach school were competitors "at some level" during the relevant time period, multiple factors counseled against finding that the schools were in direct competition with one another. *Wards Corner Beauty Acad. v. Nat'l Accrediting Comm'n of Career Arts & Scis.*, 290 F. Supp. 3d 463, 466 (E.D. Va. 2018). The court then assessed Bouman's financial interest in EEG and determined that any interest he might have held regarding the outcome of the accreditation proceedings was not disqualifying for purposes of WCBA's due process claims. Therefore, although the "case present[ed] a relatively close call," the court concluded that Bouman's indirect, limited, and speculative pecuniary interest in the proceedings failed to rebut the "presumption of honesty and integrity" to which administrative decisionmakers such as Bouman are entitled. *Id.* at 480. WCBA timely appealed.

## II.

Following a bench trial, we review the district court's factual findings for clear error and its legal conclusions de novo. Fed. R. Civ. P. 52; *Helton v. AT & T Inc.*, 709 F.3d 343, 350 (4th Cir. 2013). Under the clear error standard, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court

6

of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985). In reviewing accrediting agency decisions, we are deferential as well: we consider only whether the decision "is arbitrary and unreasonable or an abuse of discretion and whether the decision is based on substantial evidence." *Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Sch. & Colls.*, 781 F.3d 161, 171 (4th Cir. 2015) (citation omitted).

## III.

WCBA raises three issues on appeal. First, WCBA argues that it was denied an impartial decisionmaker based on Bouman's purported pecuniary interest in the outcome of the accreditation decision. Second, WCBA argues that NACCAS's failure to follow its own conflict of interest rules violated WCBA's due process rights. Third, WCBA contends that the Commissioners improperly prejudged the decision by acting as both investigators at the File Review Team level as well as adjudicators when they voted with the full Commission. We address each issue in turn.

## A.

First, WCBA argues that Bouman's participation in the NACCAS proceedings violated its due process rights in light of his pecuniary interest in the withdrawal of WCBA's accreditation. We begin by explaining the relevant law governing due process challenges in the accreditation context. We then consider each of WCBA's various

7

arguments and affirm the district court's conclusion that there was no due process violation here.

1.

We first addressed a common law due process challenge to an accreditation agency's decision in *Professional Massage*, 781 F.3d 161. We held there that while "[a]ccreditation agencies are private entities, not state actors, and as such are not subject to the strictures of constitutional due process requirements," they still owe a "common law duty . . . to employ fair procedures when making decisions affecting their members." *Id.* at 169 (citation omitted). Significantly, however, we stressed, as the district court here recognized, that "[a]n administrative decisionmaker is entitled to a 'presumption of honesty and integrity.'" *Id.* at 178 (alterations omitted) (citation omitted).

In defining what constitutes a disqualifying pecuniary interest for the purposes of due process, the Supreme Court has held that a litigant is not denied an impartial decisionmaker when the decisionmaker has "a *slight* pecuniary interest" in the outcome rather than a "direct, personal, substantial" interest. *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 825–26 (1986) (emphasis added) (citation omitted). In that case, the Court held that the plaintiffs were not denied constitutional due process where the judges "might conceivably have had a slight pecuniary interest" because "[a]ny interest they might have had . . . was clearly highly speculative and contingent." *Id.* This court has also previously held that recusal is unnecessary where the pecuniary interest at issue is "remote and speculative." *In re Va. Elec. & Power Co.*, 539 F.2d 357, 368 (4th Cir.

8

1976).  In contrast, a state licensing tribunal violates due process when its members have a direct and substantial interest in the outcome of the proceedings.  For example, the Court found a due process violation where members of a state licensing board stood to benefit from the proceedings because the "individual members of the Board . . . would fall heir to [plaintiffs'] business" should the plaintiffs' licenses be revoked.  *Gibson v. Berryhill*, 411 U.S. 564, 571 (1973).

A due process claim does not require a showing that the adjudicator was actually influenced by the alleged pecuniary interest.  Instead, the question is whether sitting on that case "would offer a possible temptation to the average . . . judge to . . . lead him not to hold the balance nice, clear and true."  *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 879 (2009) (alterations in original) (citation omitted); *see Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir. 1995) (explaining that there are two ways a plaintiff may demonstrate a due process violation: actual bias on the part of the adjudicator, or an adjudicator's pecuniary interest "in the outcome of the proceedings [that] create[s] an *appearance of partiality* that violates due process, even without any showing of actual bias").

Determining whether an adjudicator's pecuniary interest violates due process is a fact- and context-specific inquiry.  *See Pinar v. Dole*, 747 F.2d 899, 907 (4th Cir. 1984) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands.") (citation omitted).  This is particularly true in the accreditation context, where adjudicators are often members of the industry they are evaluating.  Here, for example, seven of the thirteen Commissioners are owners or administrators of schools in fields of training within NACCAS's scope, including cosmetology and barbering.

9

Indeed, as the Ninth Circuit has observed, "[i]f members of a licensing board were disqualified whenever they have 'some' competitive interest in the outcome of proceedings before them, practitioners in the field would as a practical matter be excluded from becoming members of such boards." *Stivers*, 71 F.3d at 743.

2.

With this legal framework in mind, we consider WCBA's argument that Bouman's participation in the NACCAS proceedings violated WCBA's due process rights. According to WCBA, Bouman had an improper pecuniary interest in WCBA's competitor by virtue of his EEG position and stock ownership and was therefore financially motivated to withdraw WCBA's accreditation. WCBA's argument implicitly relies on several conjunctive steps: WCBA and EEG must have been in competition with one another such that Bouman's connection to EEG was problematic; the revocation of WCBA's accreditation must have resulted in its students transferring to EEG; and, finally, to the extent that EEG's student enrollment increased at all, it must have led to some sort of financial benefit to Bouman. While we conclude that WCBA's theory fails at the first step, out of an abundance of caution we nonetheless address each of WCBA's arguments below.

As a threshold matter, WCBA's argument requires that WCBA and EEG were in competition with one another. It is true, as the district court acknowledged, that there was "some degree of competition" between WCBA and EEG. *Wards*, 290 F. Supp. 3d at 480. However, such competition does not give rise to a due process violation here in

10

light of multiple factors found by the district court, which WCBA does not contest. First, there were three other competitors in the area besides WCBA and EEG, diluting the competitive significance of any one school. Second, although WCBA and EEG were twelve miles apart from one another, the district court nonetheless determined--and indeed WCBA itself acknowledged in its verified complaint--that the schools were a "considerable commuting distance away" from one another. *Id.* at 480–81. The district court reached this conclusion after considering that few WCBA students had access to a means of transportation that would have made it possible for them to attend EEG rather than WCBA. Indeed, WCBA's President himself testified that the difficulty of securing transportation was "reason alone" for many students to drop out of WCBA.[2] *Id.* at 481. Therefore, this distance, coupled with the students' resources, created a "substantial limitation[] on the degree of direct competition" between the schools. *Id.* at 480 (emphasis omitted). Third, WCBA taught both cosmetology and barbering, whereas EEG taught only cosmetology. Finally, certain administrative obstacles--such as the differences in teaching methods and curricula--made it difficult for students to transfer between schools. Accordingly, the limited amount of competition between WCBA and EEG at the relevant period simply does not rise to the level of "direct competition" necessary to form the basis for a common law due process claim.

---

[2] The district court further observed that EEG itself operated two schools approximately twenty to twenty-five miles apart, highlighting the limited geographic reach of each school. *Wards*, 290 F. Supp. 3d. at 480.

Cases where such competition has been found make the distinction clear. In *Gibson*, the Supreme Court found that a state licensing tribunal held a direct and substantial competitive interest where the adjudicators would have inherited the business of the plaintiffs--who represented nearly half of all suppliers in the relevant statewide market--as a result of the proceedings. 411 U.S. at 571, 578–79. Similarly, in *Wilkerson v. Johnson*, 699 F.2d 325, 328–29 (6th Cir. 1983), the Sixth Circuit affirmed a jury verdict finding a due process violation where a licensing board member owned the barbershop next door to the plaintiff's. The court reasoned that "the licensing of the new barber shop next door would have created direct and significant competition for [the board member]." *Id.* at 328. Here, in contrast, there were at least three other competitor schools in the area, and together with additional factors that the district court considered, WCBA and EEG were simply not in "direct and significant competition" with one another such that Bouman's involvement in the NACCAS proceedings violated WCBA's due process rights.

Even assuming that WCBA and EEG were in direct competition with one another, however, WCBA fails to meet the remaining steps necessary to establish a due process claim. WCBA has not demonstrated that NACCAS's decision to withdraw WCBA's accreditation resulted in students transferring from WCBA to EEG. The record evidence shows that at most, three students transferred from WCBA to EEG, and only one of those students appears to have done so after it became public knowledge that WCBA lost its

12

accreditation. Further, there is no evidence in the record indicating that this transfer was motivated by NACCAS's accreditation decision.[3]

Even if we were to consider the fact that one student transferred to EEG following the revocation of WCBA's accreditation, WCBA has not shown that this resulted in a financial benefit to Bouman that was direct and substantial such that it gave rise to a due process violation. *See Lavoie*, 475 U.S. at 825–26. On the contrary, the district court found, and we agree, that any interest Bouman might have had in the outcome of the proceeding was "slight," *Wards*, 290 F. Supp. 3d at 485, rather than "direct, personal, [or] substantial," *Lavoie*, 475 U.S. at 826. The revocation of WCBA's accreditation did not result in a direct financial benefit to Bouman. There is no evidence in the record to suggest that Bouman received any remuneration--by way of a bonus or otherwise--from EEG as a result of NACCAS's accreditation decision. And any indirect, "trickle down" financial benefit he might receive in the future is purely speculative. *Wards*, 290 F. Supp. 3d at 485. This is so in part because Bouman had not received a bonus from EEG for several years due to the industry's substantial decline and one did not appear to be forthcoming. In addition, Bouman expressed his plans to retire in the near future, undercutting the suggestion that he was motivated by a financial interest in the WCBA accreditation decision. Accordingly, such a slight pecuniary interest is not disqualifying for the purposes of a common law due process claim.

---

[3] We further note that WCBA did not argue, and so we do not address, that prospective students decided to go to EEG instead of WCBA as a result of the accreditation decision.

We note that Bouman's role in the ultimate accreditation decision was limited. He did not participate in the final debate before the dispositive vote was cast, nor did he formally vote to withdraw accreditation. While Bouman was a member of the File Review Team that considered WCBA's accreditation initially, he did so only to fill in for another team member who was unexpectedly absent; Bouman could not have anticipated the happenstance of such an opening on the team that was assigned WCBA's school action. Further, upon finding Bouman's testimony to be credible, the district court concluded that any such interest Bouman might have held was unknown to him at the time of the proceedings. Bouman was therefore not improperly tempted from "hold[ing] the balance nice, clear and true."[4] *Wards*, 290 F. Supp. 3d at 486 (quoting *Caperton*, 556 U.S. at 878).

We conclude that there is insufficient evidence that WCBA was deprived of an impartial decisionmaker as a result of Bouman's speculative pecuniary interest so as to justify a departure from the deferential standard due to an accreditation agency. We therefore affirm the district court's determination that NACCAS did not deprive WCBA of its right to due process of law on this basis.[5]

---

[4] We emphasize that actual bias is not necessary to make out a due process claim and that the appearance of partiality may be sufficient to support such a claim. *See Stivers*, 71 F.3d at 741. Here, however, for the reasons stated *supra*, we do not find that the limited competition between WCBA and EEG constitutes such an appearance of partiality in this case.

[5] We likewise reject WCBA's related argument that Bouman's participation violated WCBA's due process rights because his fiduciary duty to EEG creates an unresolvable conflict of interest. The district court considered and rejected WCBA's (Continued)

14

Nonetheless, we share the district court's concern that throughout the Commission Meeting--from the assignment of school actions to File Review Teams to the final vote--neither NACCAS Commissioners nor staff appear to have considered whether ruling upon a school action might result in a financial benefit to a Commissioner. Such safeguards may be prudent to avoid a due process violation, whether by actual bias or the appearance of partiality. *See Stivers*, 71 F.3d at 741.

## B.

Second, WCBA argues that NACCAS's failure to follow its own internal rules violated WCBA's due process rights. Specifically, WCBA argues that Bouman's participation in the accreditation proceedings breached NACCAS's internal rules, and that this in turn constitutes a violation of WCBA's common law due process rights. In support of this argument, WCBA relies on *Professional Massage*, where we explained that "[w]hen adjudicating common law due process claims against accreditation agencies, courts should 'focus primarily on whether the accrediting body's internal rules provide[d] a fair and impartial procedure and whether it [followed] its rules in reaching its decision.'" 781 F.3d at 172 (alterations in original) (citation omitted).

---

contention that Bouman had a duty to EEG to drive competition out of business through his role at NACCAS. *Wards*, 290 F. Supp. 3d at 480 n.14. The court reasoned, and we agree, that such a finding would effectively preclude any practitioner from serving on such a board. *See Stivers*, 71 F.3d at 743. Indeed, WCBA fails to cite to binding authority in support of its position, and we decline to endorse it here.

The district court rejected WCBA's argument for the same reasons that it found that NACCAS had not violated WCBA's common law due process rights. The court explained that NACCAS's internal rules "necessarily require[] a Commissioner to evaluate the scope of a potential conflict in determining whether to recuse himself or herself from a specific agenda item, and the application of such fact-specific analysis is consistent with, and co-existent with, the common law right to an impartial decisionmaker." *Wards*, 290 F. Supp. 3d at 485 n.26.

We agree. We are unpersuaded that NACCAS's rules impose a higher standard than the general common law duty to provide an impartial decisionmaker such that a violation of those rules leads to a due process violation in this case. The two provisions that WCBA argues NACCAS violated require Commissioners to disclose potential conflicts of interest--including "actual or potential personal benefit[s] from another source" and "personal interests"--and prohibit Commissioners from abusing their position to gain "improper personal, material or pecuniary benefits," respectively.[6] J.A. 652. But NACCAS's internal rules do not define what constitutes an improper personal or pecuniary interest, and we see no basis upon which we can infer that NACCAS has imposed more stringent disqualifying pecuniary interests. We therefore affirm dismissal of WCBA's due process claim based on an alleged violation of NACCAS's internal rules.

---

[6] WCBA has not argued that, and therefore we do not consider whether, aside from a purported financial benefit, Bouman received or expected to receive "actual or potential personal benefit[s] from another source" such that those benefits constituted a disqualifying interest for due process purposes. J.A. 652.

16

C.

Finally, WCBA argues that the district court erred in denying its due process claims on the theory that the Commissioners who reviewed WCBA's accreditation-- namely, the File Review Team--improperly prejudged the decision by acting as both investigators and adjudicators. Because WCBA failed to raise the issue to the district court until post-trial briefing, we decline to address it here.

As a rule, "issues must be raised in lower courts in order to be preserved as potential grounds of decision in higher courts . . . [which] requires that the lower court be fairly put on notice as to the substance of the issue.'" *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469 (2000). Further, a party must do more than raise a non-specific objection or claim to preserve a more specific argument on appeal. Rather, "to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court." *In re Under Seal*, 749 F.3d 276, 287 (4th Cir. 2014) (citation omitted). Finally, an argument "must be timely" to be preserved. *Id.* (quoting *Kollsman, a Div. of Sequa Corp. v. Cohen*, 996 F.2d 702, 707 (4th Cir. 1993)).

WCBA insists that it preserved this question prior to trial. Specifically, it contends that in the final pre-trial order, WCBA stated the following as a triable issue: whether "one of the participants in the withdrawal of Ward Corner's accreditation [had] a conflict of interest." J.A. 716. But this broad framing of the issues neither "plainly" nor "properly" identified such issues for the district court. *See In re Under Seal*, 749 F.3d at 288. On the contrary, the triable issue suggests--as the district court here observed--that "[t]he issue requiring the resolution of disputed facts and inferences in this case has

17

always been centered on whether Mr. Bouman's interest in EEG required him to recuse himself under the portions of NACCAS's ethical rules." *Wards*, 290 F. Supp. 3d at 487 n.29.

Faced with WCBA's prejudgment argument post-trial, the district court expressly "reject[ed] [WCBA's] late-raised contention that it was denied the right to fair procedure based on [NACCAS's] method of combining investigative and/or prosecutorial functions with adjudicative functions. Such claim is untimely as it was not identified by Plaintiff as a triable issue in the final pre-trial order." *Id.* at 487 n.28. We agree and do the same here; WCBA failed to preserve this issue below and cannot raise it now on appeal.

IV.

Accordingly, the district court's order is

*AFFIRMED*.