**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-1644**

---

CLINCHFIELD COAL COMPANY, c/o HealthSmart Casualty Claims Solutions,

Petitioner,

v.

GERALDINE MULLINS, widow of DONALD MULLINS; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

Respondents.

---

On Petition for Review of an Order of the Benefit Review Board. (21-0363-BLA)

---

Argued: September 9, 2025                    Decided: December 2, 2025

---

Before THACKER and QUATTLEBAUM, Circuit Judges, and FLOYD, Senior Circuit Judge.

---

Petition denied by published opinion. Judge Thacker wrote the opinion in which Judge Floyd joined. Judge Quattlebaum wrote a dissenting opinion.

---

**ARGUED:** Kendra R. Prince, PENN, STUART & ESKRIDGE, Abingdon, Virginia, for Petitioner. Brad Anthony Austin, WOLFE, WILLIAMS & AUSTIN, Norton, Virginia, for Respondent. **ON BRIEF:** Timothy W. Gresham, PENN, STUART & ESKRIDGE, Abingdon, Virginia, for Petitioner.

---

THACKER, Circuit Judge:

In 2014, Geraldine Mullins ("Respondent") filed for survivor benefits pursuant to the Black Lung Benefits Act ("BLBA"), 30 U.S.C. § 901–944, following the death of her husband who was a coal miner, Donald Mullins ("the Miner").

Following a series of decisions by Administrative Law Judges ("ALJs") and the Benefits Review Board ("BRB"), Respondent was awarded survivor's benefits under the BLBA. Clinchfield Coal Company ("Petitioner"), the identified liable operator, appealed the decision.

Because the BRB's decision affirming the ALJ's award of benefits was supported by substantial evidence, the petition is denied.

I.

A.

Regulatory Background

Respondent's husband was a coal miner for nearly 28 years. On February 3, 2014, following a three day hospitalization, he passed away at Clinch Valley Medical Center. Following her husband's death, Respondent filed a claim for survivor's benefits pursuant to the BLBA on May 23, 2014.

The BLBA provides an avenue for coal miners who are totally disabled due to pneumoconiosis[1] from their employment in the mines to receive benefits. 30 U.S.C.

---

[1] Pneumoconiosis, commonly known as "Black Lung," is a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. 30 U.S.C. § 902(b).

§ 901(a); 20 C.F.R. § 718.205. Likewise, eligible survivors of coal miners whose deaths were due to pneumoconiosis may receive benefits. The BLBA imposes liability on coal mine operators for payment of monthly benefits. 30 U.S.C. § 932.

The BLBA creates a process for adjudicating claims for benefits. 30 U.S.C. § 932. The process begins when a disabled coal miner, or a surviving dependent of a miner who has died of pneumoconiosis, files a claim. *Id.* at § 932(a) (incorporating the procedures outlined in the Longshore and Harbor Workers' Compensation Act into the BLBA); 20 C.F.R. §§ 725.303, 401. That claim is filed with the District Director in the Department of Labor's Office of Workers' Compensation Programs. 20 C.F.R. §§ 725.303, 401.

To receive benefits, a claimant must prove: (1) the miner had pneumoconiosis; (2) the miner's pneumoconiosis arose out of coal mining employment; and (3) the miner's death was due to pneumoconiosis. 20 C.F.R. § 718.205(a); *Collins v. Pond Creek Mining Co.*, 751 F.3d 180, 184 (4th Cir. 2014). A presumption that a miner's death was due to pneumoconiosis may be invoked upon a showing (1) of fifteen years of employment in underground coal mines or in coal mines substantially similar in conditions to underground mines and (2) that the miner had, at the time of his death, a "totally disabling respiratory or pulmonary impairment."[2] 20 C.F.R. § 718.305(b). In the absence of contrary probative evidence, total disability may be established based on qualifying pulmonary function tests,

---

[2] Prior to 2010, a claimant had to establish that his pneumoconiosis was a "substantially contributing cause to his death." However, in 2010 Congress reinstated the 15-year rebuttable presumption. 30 U.S.C. § 921(c)(4); Patient Protection and Affordable Care Act (PPACA), Pub. L. No. 111-148, § 1556, 124 Stat. 119, 260 (2010).

arterial blood gas ("ABG") tests,[3] evidence of cor pulmonale with right-sided congestive heart failure, or medical opinions. *Id.* § 718.204(b)(2)(i)–(iv).

The regulations set forth an additional requirement for qualifying ABG tests administered during a hospitalization which ends in a miner's death. The relevant regulation provides:

> If one or more blood-gas studies producing results which meet the appropriate table in Appendix C is administered during a hospitalization which ends in the miner's death, then any such study must be *accompanied by a physician's report establishing that the test results were produced by a chronic respiratory or pulmonary condition*. Failure to produce such a report will prevent reliance on the blood-gas study as evidence that the miner was totally disabled at death.

20 C.F.R. § 718.105(d) (emphasis supplied).

Once the claimant has established the miner was totally disabled due to a respiratory or pulmonary impairment, the presumption arises that the miner's death was due to pneumoconiosis, and it may be rebutted only upon a showing by the employer that either: (1) the miner did not have pneumoconiosis; or (2) no part of the miner's death was caused by pneumoconiosis. 20 C.F.R. § 718.305(d)(2).

### B.

### Decisions of the ALJ and BRB

On April 16, 2015, the District Director overseeing Respondent's survivor benefits claim issued a Proposed Decision and Order Awarding Benefits. The Proposed Order

---

[3] For an ABG test to establish total disability, the results must be equal to or less than the applicable table values set forth in Appendix C of 20 C.F.R. Part 718.

4

identified Petitioner as the responsible operator.[4]  In response, Petitioner filed a request for hearing before the Office of Administrative Law Judges ("OALJ").  The District Director then referred the claim to the OALJ.

The appeal was initially assigned to Administrative Law Judge William T. Barto ("ALJ Barto") who issued a Decision and Order ("D & O") Denying Benefits on June 1, 2017.  In reaching his decision, ALJ Barto considered whether Respondent qualified for the rebuttable presumption set forth in 20 C.F.R. § 718.305.  ALJ Barto concluded that although Respondent satisfied the preliminary requirement for the presumption because the Miner had at least 15 years of qualifying coal mine employment, total disability had not been sufficiently established.  Because there was no evidence of cor pulmonale with right sided congestive heart failure and no pulmonary function tests, ALJ Barto's disability analysis hinged on the two ABG studies conducted during the period of the Miner's terminal hospitalization.  ALJ Barto held that while the two ABG results qualified under Appendix C,[5] they were not accompanied by a physician's report that established the ABG studies were produced by the Miner's pneumoconiosis as required by 20 C.F.R. § 718.105(d).  Therefore, ALJ Barto concluded that the ABG tests could not be used as evidence to establish total disability.

---

[4] Petitioner is not challenging its identity as the responsible operator on appeal.

[5] The determination that the ABG tests fell within the standards set forth in Appendix C is unchallenged on appeal.

5

In reviewing the medical opinions in the record to determine if any would connect the ABG results to pneumoconiosis, ALJ Barto concluded "[t]he only report provided in connection with the ABGs is Dr. Patel's discharge summary." J.A. 327.[6] However, ALJ Barto concluded that Dr. Patel's discharge summary was insufficient to satisfy the regulation because it "fails to provide an opinion as to whether the Miner's respiratory failure or [acute respiratory distress syndrome] was due to a chronic respiratory or pulmonary condition, rather than a sudden onset of a respiratory infection unrelated to coal dust exposure or coal workers' pneumoconiosis." *Id.*

As a result, ALJ Barto held the ABG tests were insufficient to establish total disability due to their failure to meet the standard set forth in 20 C.F.R. § 718.105(d), and accordingly, Respondent could not establish the rebuttable presumption. And, in the absence of the presumption, ALJ Barto concluded Respondent did not establish entitlement to benefits.

Following ALJ Barto's D & O denying benefits, Respondent filed a request for modification. In seeking a review of a prior award or denial of benefits, a party may file a request for modification based upon a change in condition or a mistake in a determination of fact. 20 C.F.R. § 725.310(a). Because Respondent did not submit additional evidence in support of the modification, the District Director interpreted her modification to be on the ground that ALJ Barto's decision was based on a mistake in a determination of fact.

---

[6] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

6

The modification request was then assigned to Administrative Law Judge Richard M. Clark ("ALJ Clark") for review.

On March 10, 2021, ALJ Clark issued a D & O Granting Modification and Awarding Benefits. ALJ Clark agreed with ALJ Barto's conclusion that Dr. Patel's report was insufficient but disagreed that no other physician's report established total disability. ALJ Clark pointed to the 47 page physician report of Dr. Perper, in which he addressed the two terminal ABG results, noting they "demonstrated severe hypoxemia and hypercapnia during the terminal 2014 hospitalization," and concluding, "the medical records of the terminal hospitalization at Buchanon General Hospital in February 2024, clearly document respiratory failure complicating coal workers' pneumoconiosis with bilateral pneumonia and acute respiratory distress syndrome." J.A. 13.

Specifically, ALJ Clark focused on the following statement in Dr. Perper's report:

The first symptomatic manifestations of chronic lung disease of shortness of breath on mild exertion, cough and occasional exportation of mucus were documented as starting in 1998[.] Furthermore, the respiratory symptoms not only continued progressively but also gradually worsened and were accompanied by worsening radiological findings, increased objective evidence of abnormal respiratory functions, incremental decrease in diffusion of pulmonary gases and hypoxemia, leading to very poor quality of life eventually to death.

J.A. 13. ALJ Clark determined that this statement in Dr. Perper's report "links the Miner's abnormal terminal ABG results obtained during the terminal hospitalization in February 2014 with a chronic lung condition." *Id.*

Accordingly, ALJ Clark held that there was a mistake in determination of fact on ALJ Barto's part. Specifically, ALJ Clark concluded that Respondent established the 20

7

C.F.R. § 718.305 presumption as allowing for a grant of benefits because Dr. Perper's opinion sufficiently connected the terminal ABG results to the Miner's pneumoconiosis.

Petitioner appealed ALJ Clark's decision to the BRB, arguing that ALJ Clark erred in granting modification because the Miner was not totally disabled. On April 17, 2023, the BRB affirmed ALJ Clark's D & O granting benefits. The BRB held that the terminal ABG tests established total disability, and, as a result, Respondent was entitled to the presumption that the Miner's death was due to pneumoconiosis. The BRB agreed with ALJ Clark's decision, reasoning that Dr. Perper's opinion satisfied 20 C.F.R. § 718.105(d) because Dr. Perper: (1) discussed the Miner's chronic respiratory diseases referenced throughout his treatment records, including coal workers' pneumoconiosis, chronic obstructive pulmonary disease, chronic bronchitis, and asthma; (2) explained that the conditions continued to progress over time, as demonstrated by "worsening symptoms, worsening radiographic findings, and abnormal blood gases, and that the progression of the Miner's respiratory diseases contributed to the Miner's poor quality of life and then his death"; and (3) concluded the medical records of the Miner's final hospitalization "document respiratory failure complicating coal workers' pneumoconiosis with bilateral pneumonia and acute respiratory distress syndrome." J.A. 87–88.

The BRB further concluded that because Respondent invoked the 20 C.F.R. § 718.305(b) presumption, the burden shifted to Petitioner to establish the Miner had neither legal nor clinical pneumoconiosis, or that "no part of the miner's death was caused by pneumoconiosis." 20 C.F.R. § 718.305(d)(2). But, on appeal to the BRB, Petitioner

8

did not challenge ALJ Clark's finding that Petitioner had failed to rebut the presumption. Accordingly, the BRB affirmed.

On June 14, 2023, Petitioner filed the present appeal alleging ALJ Clark committed several errors in the D & O awarding benefits. Petitioner challenges the finding that Respondent met her burden of proving she was entitled to benefits. Specifically, Petitioner contends: (1) the terminal ABG results were not accompanied by a physician's report sufficient to establish that the results were produced by a chronic respiratory or pulmonary condition, such that the § 718.305 presumption could not be invoked; (2) the ALJ failed to make a finding that Dr. Perper's report was well reasoned and well documented; and (3) any error by ALJ Barto was an error of law and, accordingly, modification was improper.

## II.

We review an ALJ decision that has been affirmed by the BRB to determine whether it is rational and in accordance with the law as supported by substantial evidence. *E. Assoc. Coal Corp. v. Dir., Off. of Worker's Comp Programs*, 805 F.3d 502, 510 (4th Cir. 2015); *Hobet Mining, LLC v. Epling*, 783 F.3d 498, 504 (4th Cir. 2015) (citing *Harman Mining Co. v. Dir., Off. of Worker's Comp. Programs*, 678 F.3d 305, 310 (4th Cir. 2012)). We review conclusions of law de novo. *Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 282 (4th Cir. 2010).

In determining whether an ALJ's conclusion was supported by substantial evidence, we consider "whether all relevant evidence has been analyzed and whether the ALJ has sufficiently explained his rationale in crediting" or discrediting certain evidence. *Frontier-*

9

*Kemper Constructors Inc. v. Dir., Off. of Worker's Comp Programs*, 876 F.3d 683, 687 (4th Cir. 2017) (quoting *Hobet Mining*, 783 F.3d at 504) (internal quotation marks omitted); *Island Creek Coal Co. v. Blankenship*, 123 F.4th 684, 690 (4th Cir. 2024) (citing *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998)).  In essence, the question is whether a reasonable mind could find that the evidence is adequate to support the conclusion.  *Scott v. Mason Coal Co.*, 289 F.3d 263, 267 (4th Cir. 2002).

### III.

### A.

### Waiver

Respondent alleges that Petitioner waived its arguments relating to (1) whether Dr. Perper's report met the requirements of § 718.105(d), and (2) whether the ALJ was required to make a finding that Dr. Perper's report was well reasoned and well documented. In support of her argument, Respondent notes that Petitioner only listed one issue in its brief before the BRB: "The ALJ erred in finding the claimant met his burden in proving pulmonary disability."  Respondent's Brief at 18.

We have held that a party waives issues on appeal that it does "not present to the [BRB]."  *Armco, Inc. v. Martin*, 277 F.3d 468, 476 (4th Cir. 2002); *see also* 20 C.F.R. § 802.211(a); *Edd Potter Coal Co., Inc. v. Dir., Off. of Worker's Comp Programs*, 39 F.4th 202 (4th Cir. 2022) (explaining the "obligation is straightforward: . . . any petition for review must list[] the specific issues to be considered on appeal" (internal quotation marks omitted)).  In the analogous context of an appeal from a district court order, we are "obliged on appeal to consider any theory plainly encompassed by the submissions in the underlying

litigation." *De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 528 (4th Cir. 2022) (internal quotation marks omitted). While "[v]ariations on arguments made below may be pursued," the appealing party "may not leave the district court without any signal that it contests a fact or point of law." *Id.* (internal quotation marks omitted); *see also Wards Corner Beauty Acad. v. Nat'l Accrediting Comm'n of Career Arts & Scis.*, 922 F.3d 568, 578 (4th Cir. 2019) (providing that a lower court must be fairly put on notice as to the substance of the issue in order for it to be preserved as "potential grounds of decision in higher courts" (internal quotation marks omitted)).

In *Riley v. Island Creek Coal Co.*, 688 F. App'x 219 (4th Cir. 2017), we rejected the employer's assertion that claimant waived appellate review of the BRB's dispositive conclusions. *Id.* at 220 n.1. We explained, "Claimant's argument clearly takes issue with the entirety of the [BRB's] decision on the ground that it failed to require the ALJ to adhere to her statutory obligation in reviewing the claim." *Id.* Because "[t]here [was] little more Claimant could have said to advance this argument" before the BRB, we concluded it was preserved for appellate review. *Id.* Although *Riley* was an unpublished opinion, we find its reasoning persuasive here.

Accordingly, we discern no waiver here. Both of Petitioner's arguments elaborate on the larger issue on appeal—the sufficiency of Dr. Perper's report. As a result, these arguments are "plainly encompassed" by the ones raised before the BRB below and, therefore, are not waived.

11

B.

ABG Studies as Evidence of Total Disability

In support of its argument that ALJ Clark's use of the terminal ABG results as evidence of total disability was improper, Petitioner asserts ALJ Clark "mischaracterized the evidence and implied Dr. Perper stated more than he did." Petitioner's Opening Br. at 11. Petitioner attempts to support this assertion by alleging: (1) Dr. Perper's report only established that the terminal ABG studies were the result of the Miner's acute conditions, as opposed to his chronic conditions; and (2) ALJ Clark's use of the word "link" in relation to the relationship between ABG results and the chronic conditions instead of the word "produce" is insufficient to support a finding of a proper physician's report so as to allow for a conclusion of total disability.

1.

The Totality of the Physician's Report Establishes the Terminal ABG Results were Produced by Pneumoconiosis

In *Trump v. Eastern Assoc. Coal Corp.*, 737 F. App'x 156 (4th Cir. 2018), we reversed the ALJ's decision not to consider a physician's opinion in a BLBA survivor benefits decision. The ALJ in *Eastern Assoc. Coal Corp.* rejected the physician's opinion on the basis that a single statement in the opinion "by itself, is insufficient to be determinative as to the cause of the miner's death . . . [because i]t does not offer an opinion on whether or not the miner's hypoxemia caused or contributed to the miner's heart attack." *Id*. at 160 (emphasis omitted). However, we found this line of reasoning unconvincing, noting that by focusing on this single statement in the doctor's report in isolation, the ALJ

12

failed to account for the "totality of [the doctor's] opinion." *Id*. We pointed out that not even two sentences earlier in the report, the doctor discussed the issue at hand in more detail. We reiterate that reasoning today. In determining whether a physician's opinion should be considered in a BLBA decision, the ALJ must take into account the entirety of the opinion.

In the present appeal, a reasonable mind could infer from taking into account the totality of Dr. Perper's opinion that he reached his diagnosis of pneumoconiosis based, in part, on the terminal ABG studies. Throughout his opinion, Dr. Perper discusses the Miner's chronic conditions, as well as his acute conditions, in relation to the testing conducted throughout the Miner's lifetime and leading up to his death. Specifically, Dr. Perper's report notes:

> The first symptomatic manifestations of *chronic lung disease* of shortness of breath on mild exertion, cough and occasional expectoration of mucus were documented as starting in 1998. Furthermore, the respiratory symptoms not only continued progressively but also gradually worsened and were accompanied by worsening radiological pulmonary findings, increased objective evidence of abnormal respiratory functions, incremental decrease in diffusion of *pulmonary gases* and hypoxemia, *leading to very poor quality of life eventually to death*.

J.A. 614–15 (emphases supplied).

Further, the report discusses the ABG studies conducted at the Miner's terminal hospitalization, finding they demonstrated "severe hypoxemia and hypercapnia." J.A. 615. And, similar to *Eastern Assoc. Coal Corp.*, only two paragraphs after Dr. Perper's discussion of the ABG studies, Dr. Perper reaches his final diagnosis that the Miner suffered from "complicated coal workers' pneumoconiosis" at the time of his death. *Id.*

13

Considering the totality of Dr. Perper's opinion, a reasonable trier of fact could determine that Dr. Perper based his diagnosis of pneumoconiosis, at least in part, on the Miner's terminal ABG study results. This reasoning is especially apparent in the following section of Dr. Perper's report:

> The following evidence substantiates the worsening of the various respiratory parameters over the years of the *chronic pulmonary disease* survival: . . . the *arterial blood gases* followed a similar pattern of marked progressive worsening.

J.A. 615.

This conclusion is further supported by the proximity between the discussion of the terminal ABG results and the final diagnosis of pneumoconiosis -- only one paragraph between the two -- lending to the conclusion that Dr. Perper based his diagnosis of a chronic respiratory condition on the ABG results. The same is true in the inverse: because Dr. Perper based his diagnosis for pneumoconiosis in some part on the deathbed ABG results, then it can be reasoned that Dr. Perper was of the opinion that the terminal ABG results were produced by pneumoconiosis (a chronic respiratory condition). This is especially apparent in light of the fact that the terminal ABG studies at issue were the only ABG studies conducted on the Miner. A reasonable mind could infer that Dr. Perper was relying on these final results to reach his diagnosis of pneumoconiosis.

Here, even though Dr. Perper does not explicitly state that the terminal ABG results were produced by a chronic pulmonary or respiratory condition, his opinion is sufficiently reasoned, and a reasonable ALJ could infer that his opinion connects the ABG results and the diagnosis of pneumoconiosis.

14

The dissent asserts that Dr. Perper's opinion is insufficient because he does not explicitly state "that the ABG studies' results were produced by a chronic pulmonary or respiratory condition," and "without this statement, no matter how well-reasoned as to [the Miner's] pneumoconiosis and its impact on his employment, Dr. Perper's report fails to satisfy § 718.105(d)." Post at 27. In support of this assertion, the dissent notes "[t]he regulations require a physician's statement that the ABG 'test results were produced by a chronic respiratory or pulmonary condition.'" Post at 26–27 (quoting 20 C.F.R. § 718.105(d)). However, this is a misstatement of the regulation. The relevant section, 20 C.F.R. § 718.105(d), does not require the physician's report *itself* to explicitly use the language "produced by." Rather, § 718.105(d) requires any qualifying ABG study to be accompanied by "a physician's report *establishing* that the test results were produced by a chronic respiratory or pulmonary condition." 20 C.F.R. § 718.105(d) (emphasis supplied). Moreover, the issue on appeal is ALJ Clark's finding that Dr. Perper's report sufficiently "linked" the ABG results to the Miner's pneumoconiosis. Dr. Perper's non-use of the word "produce" is not at issue. While § 718.105(d) requires the physician's report to establish that the ABG results were produced by a chronic condition, it does not require the physician to explicitly use the words "produced by." The report must "establish," in whatever form that may take. To quote the dissent, "Words matter. We must not substitute ours for the ones in the regulations." Post at 27.

Moreover, we find unpersuasive Petitioner's argument that the acute conditions present at the Miner's terminal hospitalization may have instead caused his ABG results. In support of this argument, Petitioner cites the Department of Labor's ("DOL") initial

15

notice of proposed rulemaking ("NPRM") in which the DOL announced and explained the agency's position on 20 C.F.R. Part 718. In its NPRM, the DOL noted the physician report requirement was necessary because the miner's qualifying test results during a terminal hospitalization may be related to an acute non-pulmonary condition rather than a chronic pulmonary impairment. 64 Fed. Reg. 54966, 54977 (Oct. 8, 1999).

To be sure, the ALJ must consider such a possibility. But, here, the acute respiratory injuries present at the Miner's death were attributable to his underlying chronic coal dust injuries. An argument to the contrary ignores the underlying cause of the acute conditions.

Dr. Caffrey, a physician who examined the Miner's record on behalf of Petitioner, concluded the Miner's pneumoconiosis did not cause the acute conditions present at his death. However, both Dr. Perper and the BRB disagree with this conclusion. Dr. Perper countered Dr. Caffrey's assessment noting, "significant and substantial coal workers' pneumoconiosis . . . in the Miner's case are often complicated by severe pulmonary infection and pneumonia prior to death." J.A. 88. And, in addressing Dr. Caffrey's opinion, the BRB noted that concluding the acute conditions present at the Miner's terminal hospitalization may have caused his disabling ABG values "overlooks a salient fact: Dr. Perper, whose opinion the ALJ found credible, attributed the acute respiratory injury present at the Miner's death to his underlying chronic and progressively worsening coal dust-induced diseases." J.A. 88, n.12.

Accordingly, substantial evidence supports the ALJ and BRB's conclusions rejecting Petitioner's argument that the ABG studies were produced by acute conditions rather than the chronic pulmonary conditions, such as pneumoconiosis.

16

2.

Propriety of the Use of the Word "Link" As Opposed to "Produce"

As to Petitioner's argument that ALJ Clark's use of the word "link" instead of "produce" renders his reliance on Dr. Perper's opinion improper, we disagree.  In his decision, ALJ Clark concludes, "Dr. Perper's report *links* the Miner's abnormal ABG results obtained during the terminal hospitalization in February 2014 with a chronic lung condition, thereby satisfying the requirements of § 718.105(d)."  J.A. 13 (emphasis supplied).  Petitioner alleges the word "produce," as opposed to "link," is the appropriate terminology.  And Petitioner opines that the word "produce" requires a causal connection, whereas "link" only requires a correlation.  We disagree.  In this context, there is no meaningful difference between "link" and "produce."

ALJ Clark was correct to use the word "link," given that the DOL itself uses the word "link." In its second NPRM for regulations implementing the BLBA, the DOL stated:

> Arterial blood gas studies conducted during a terminal illness hospitalization may be especially susceptible to producing low values unrelated to chronic respiratory or pulmonary disease. Consequently, reliance on such studies should be predicated on an additional showing that the qualifying (or abnormal) test results can be *medically linked* to chronic lung disease.

64 Fed. Reg. 54966, 54977 (Oct. 8, 1999); 65 Fed. Reg. 79920, 79935 (Dec. 20, 2000) (emphasis supplied).

Thus, the use of the word "link" in ALJ Clark's decision to connect the terminal ABG studies to the Miner's pneumoconiosis does not affect ALJ Clark's application of 20 C.F.R. § 718.105(d) to Dr. Perper's opinion.

17

3.

Invocation of the 20 C.F.R. § 718.105(d) Presumption

Consequently, ALJ Clark's decision is rational, in accordance with the law, and supported by substantial evidence. First, we affirm, as unchallenged on appeal, the ALJ and BRB's finding that the Miner was employed in an underground coal mine for 27.92 years, thereby satisfying the preliminary requirement for the presumption. Second, as we have explained, a reasonable mind could conclude that Dr. Perper's opinion adequately and sufficiently connects the ABG results to the Miner's chronic respiratory condition so as to establish total disability. *E. Assoc. Coal Corp. v. Dir., Off. of Worker's Comp Programs*, 805 F.3d 502, 510 (4th Cir. 2015); *see also Scott v. Mason Coal Co.*, 289 F.3d 263, 267 (4th Cir. 2002). On this point, the dissent takes issue with our use of the word "connects" arguing that "connecting" the ABG results to the pneumoconiosis diagnosis is not what § 718.105(d) requires. Significantly, however, the dissent overlooks the context in which we use this language. We do not conclude that the only thing a physician's report needs to do is "connect" the ABG results to a miner's chronic condition. Rather, we credit the totality of the circumstances in which a physician's report may "establish" that the ABG results were produced by a chronic respiratory or pulmonary condition," by "connecting" or "linking" the results and the chronic condition.

While we acknowledge that Dr. Perper's report is not a model of clarity for purposes of connecting the terminal ABG studies to a chronic pulmonary condition, and could have been more clear, by tracking the language of the regulation it was sufficient to allow ALJ Clark and the BRB to conclude that the report satisfied 20 C.F.R. § 718.105(d).

18

Accordingly, we affirm the BRB's conclusion that Respondent properly established entitlement to the 20 C.F.R. § 718.305 presumption.

C.

<u>Finding of a Well Reasoned or Well Documented Physician's Report</u>

Petitioner argues that because the BRB failed to require the ALJ to explicitly note in his decision whether Dr. Perper's report was "well-reasoned or well-documented," its conclusion that Dr. Perper's opinion was sufficient was an error.  Petitioner's Opening Br. at 17–18.  In support of its argument, Petitioner cites to 20 C.F.R. § 718.104(c), which provides, "[i]n the case of a deceased miner . . . a report prepared by a [non-examining] physician may . . . form the basis for a finding if, in the opinion of the adjudication officer, it is accompanied by sufficient indicia of reliability in light of all relevant evidence."  20 C.F.R. § 718.104(c).  Petitioner asserts that this regulation requires the ALJ to explicitly state it is relying upon a report that is "well-reasoned and well-documented."  Petitioner's Opening Br. at 17.  In making this argument, Petitioner is essentially asking this court to ignore the ALJ's credibility findings and to reweigh the evidence anew.  We decline to do so.

This court defers to an ALJ determination regarding the proper weight to be accorded competing medical evidence, and we "must be careful not to substitute our judgment for that of the ALJ."  *Harman Mining Co. v. Dir., Off. of Worker's Comp. Programs*, 678 F.3d 305, 310 (4th Cir. 2012).  "It is the prerogative of the ALJ, rather than of a reviewing court, to resolve a battle of the experts."  *W. Va. CWP Fund v. Bender*, 782 F.3d 129, 144–45 (4th Cir. 2015) (citing *Westmoreland Coal Co. v. Cochran*, 718 F.3d

19

319, 324 (4th Cir. 2013)). "[D]eterminations of whether a physician's report is sufficiently documented and reasoned [are] a credibility matter left to the trier of fact." *Incoal Inc. v. Dir., Off. of Workers' Comp. Programs*, 123 F.4th 808, 818 (6th Cir. 2024) (internal quotation marks omitted). An "ALJ's conclusion that [one doctor]'s opinion was sufficiently reasoned but that [another doctor's opinion] was not is a matter of credibility, which we cannot visit." *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1073 (6th Cir. 2013) (quoting *A & E Coal Co. v. Adams*, 694 F.3d 798, 803 (6th Cir. 2012)) (alterations in *Adams*).

In this Circuit, we do not require the ALJ to explicitly note that the physician's report was well reasoned or well documented. Indeed, the language "well-reasoned or well-documented" does not appear in the text of the statute or Code of Federal Regulations. It is enough that the ALJ discusses and analyzes the medical opinions and denotes his or her reasoning. *See Consolidation Coal Co. v. Williams*, 453 F.3d 609, 622 (4th Cir. 2006) (noting the doctor's opinion was well reasoned because the doctor substantiated his conclusion by relying upon the miner's x-rays, pulmonary function studies, diffusion capacity tests, and extensive history of coal mine employment); *see also Manning Coal Corp.*, 257 F. App'x at 840–41 (holding a doctor's report relying upon the patient's medical history, coal mine employment, physical exam, chest x-ray, PFTs, and an ABG study was well reasoned).

Here, ALJ Clark clearly explained his views, thereby allowing us to discern the opinions upon which he relied and the reasons for such reliance. Specifically, ALJ Clark explained that he credited Dr. Perper's opinion because in reaching his diagnosis, Dr.

20

Perper "reviewed the Miner's medical records dating from 2000 which contain diagnoses of chronic obstructive pulmonary disease ("COPD"), coal workers' pneumoconiosis ("CWP"), asthma, chronic bronchitis, and obstructive airway disease ("OAD")." J.A. 13.

The BRB affirmed ALJ Clark's credibility determinations without requiring an explicit finding that Dr. Perper's report was well reasoned or well documented, and instead pointed to ALJ Clark's detailed findings related to the sufficiency of Dr. Perper's report. Accordingly, the BRB found ALJ Clark's credibility determinations to be rational and supported by substantial evidence.

We affirm the decision of the BRB that the ALJ's credibility determinations are rational and supported by substantial evidence.

D.

Modification of a Prior Award of Benefits under the BLBA

Petitioner's final argument alleges that any error in ALJ Barto's decision regarding 20 C.F.R. § 718.105(d) is an error of law, as opposed to a factual error, and, therefore, could not be remedied by a modification request. The BRB rejected this argument, reasoning that the determination of "whether the Miner was totally disabled . . . is the ultimate *fact* of [Respondent's] entitlement to benefits." J.A. 89 (emphasis supplied).

Pursuant to 20 C.F.R. § 725.310, a party may seek modification of a prior award or denial of benefits within one year from the date of denial or the last payment of benefits, on the grounds of either a change in condition or a mistake in a determination of fact. 20 C.F.R. § 725.310(a). In considering a modification, an ALJ may consider wholly new evidence, cumulative evidence, or "merely further reflect[] on the evidence initially

21

submitted," to determine whether a mistake of fact was made. *O'Keeffe v. Aerojet–General Shipyards, Inc.*, 404 U.S. 254, 256 (1971); *Jessee v. Dir., Off. of Workers' Comp. Programs*, 5 F.3d 723, 724 (4th Cir. 1993).

In the context of the BLBA, modification is an "extraordinarily broad" procedure, insofar as it permits an ALJ to correct mistakes of fact whenever "desirable in order to render justice under the act." *Betty B Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 194 F.3d 491, 497 (4th Cir. 1999) (citations omitted). Moreover, any mistake of fact may be corrected, including and most pertinently, the ultimate issue of benefits eligibility. *Id*.

In opposing the modification, Petitioner bases its argument on *Donadi v. Director, Office of Workers' Compensation Programs*, 12 BLR 1-166 (1989), which holds that an error or change of law is not a proper ground for modification. But *Donadi* is at odds with the case at hand. In *Donadi*, no facts were in dispute, and instead, the ultimate issue was the proper application of the regulations to the setting of a commencement date for benefits. In contrast, in the present appeal, the ultimate issue in dispute is whether the Miner was totally disabled in the first instance. As discussed above, in determining whether the Miner was totally disabled, ALJ Clark held ALJ Barto had failed to fully consider Dr. Perper's opinion. This is not a misapplication of the regulation, but instead an alleged mistake in a determination of fact that was able to be remedied on modification.

Consequently, and given the broad discretion accorded an ALJ to correct mistakes on modification, ALJ Clark properly allowed Respondent to bring the claim as a modification. Accordingly, we affirm the BRB's holding that ALJ Barto's error was a

22

mistake in a determination of fact and that modification by ALJ Clark was the proper remedy.

IV.

For the foregoing reasons, the Petition is

*DENIED.*

QUATTLEBAUM, Circuit Judge, dissenting:

Based on the procedural history of this case, Geraldine Mullins' black lung benefits claim depends on whether qualifying arterial blood-gas (ABG) studies[1] establish that Donald Mullins had, "at the time of his death, a totally disabling respiratory or pulmonary impairment . . . ." 20 C.F.R. § 718.305(b)(1)(iii); *see also* 20 C.F.R. § 718.204(b)(2)(i)–(iv) (setting forth the medical criteria for establishing a miner's total disability).[2] Importantly, for ABG studies conducted during a hospital stay that ends in the miner's death—as occurred here—the "study must be accompanied by a physician's report

---

[1] ABG studies "are performed to detect an impairment in the process of alveolar gas exchange" of oxygen and carbon dioxide from the lungs to the blood. 20 C.F.R. § 718.105(a); 20 C.F.R. pt. 718, Appendix C; *see also Mullins Coal Co. of Virginia v. Dir., Off. of Workers' Comp. Programs*, *U.S. Dep't of Lab.*, 484 U.S. 135, 141 (1987) (stating "blood gas studies demonstrate the presence of an impairment in the transfer of oxygen from the lungs to the blood"). A defect in this process "will manifest itself primarily as a fall in arterial oxygen tension either at rest or during exercise." 20 C.F.R. § 718.105(a).

[2] After *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), a natural question is whether we care about what the regulations say? Well, it depends. Courts no longer owe deference to agency pronouncements on the meaning of statutory language. *Loper Bright*, 603 U.S. at 412. But some statutes "expressly delegate[ ]" to an agency the authority to give meaning to a particular statutory term. *Batterton v. Francis*, 432 U.S. 416, 425 (1977). *Loper Bright* does not disturb the permissibility of such delegation. 603 U.S. at 413 ("And when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it."). And that appears to be what Congress did in the Black Lung Benefits Act here. *See* 30 U.S.C. § 902(f) (recognizing that the definition of total disability has the meaning given by regulations); 30 U.S.C. § 921(b) (recognizing that the Secretary of Labor shall by regulations prescribe standards for determining whether a miner is totally disabled due to pneumoconiosis and for determining whether the death of a miner is due to pneumoconiosis).

establishing that the test results were produced by a chronic respiratory or pulmonary condition." 20 C.F.R. § 718.105(d). And this requirement is mandatory. The "[f]ailure to produce such a report will prevent reliance on the blood-gas study as evidence that the miner was totally disabled at death." *Id.*

The first ALJ in this case found that the only ABG studies submitted in connection with the claim were conducted during Donald Mullins' terminal hospital stay. That ALJ also found that the only report provided in connection with those studies was Mullins' discharge summary. The ALJ concluded that report failed to satisfy the regulation.

Mullins didn't challenge the ALJ's conclusion that the discharge summary was insufficient. But she requested a modification of the ALJ decision claiming it contained a mistake of fact. Her request was assigned to a second ALJ. The second ALJ granted the modification, concluding it was a mistake for the first ALJ to find that the only report that addressed the ABG studies was the discharge summary. Instead, that ALJ reasoned that there was another report, Dr. Joshua Perper's,[3] that sufficiently "link[ed]" the ABG studies to Mullins' chronic lung condition and thus satisfied §718.105(d). J.A.13.

On appeal, the majority finds no error in the second ALJ's decision. The majority concludes that Dr. Perper's report was "sufficient" to satisfy § 718.105(d)'s requirement. Maj. Op. at 17. In reaching this conclusion, it does not say that Dr. Perper's report provides

---

[3] Dr. Perper's report was issued a little over two years after Mullins' death and was prepared for purposes of his black lung benefits claim. Does such a report accompany the study as the regulation requires? Because the employer did not raise the point, I will not address that separate question.

25

that Mullins' ABG studies "were produced by a chronic respiratory or pulmonary condition." 20 C.F.R. § 718.105(d). In fact, the majority concedes the report does not do that. Maj. Op. at 14 ("Dr. Perper does not explicitly state that the terminal ABG results were produced by a chronic pulmonary or respiratory condition. . . ."). But to the majority, we should overlook this deficiency because, if we look at Dr. Perper's opinion in its totality, it "is sufficiently reasoned, and a reasonable ALJ could infer that his opinion connects the ABG results and the diagnosis of pneumoconiosis." *Id.*

However, "connecting" the ABG results to the pneumoconiosis diagnosis is not what § 718.105(d) requires. The regulation requires a study accompanied by physician's statement establishing that the ABG results "were produced by" the pneumoconiosis. 20 C.F.R. § 718.105(d).

The closest Dr. Perper gets is the language the majority cites. According to Dr. Perper, the fact that "[t]he arterial blood gases followed a similar pattern of marked progressive worsening from" "substantiates the worsening of the various respiratory parameters over the years of the chronic pulmonary disease survival." J.A. 615. Frankly, I'm not exactly sure what this means. The only ABG studies in the record took place in the hospital right before Mullins died. I don't see how they substantiate the worsening of Mullins' respiratory problems "over the years." *Id.*

But giving Dr. Perper the benefit of the doubt, it sounds like he is saying that the ABG study results are consistent with a pneumoconiosis diagnosis. If so, had the regulations said that consistency was all that is required to constitute a qualifying ABG for purposes of § 718.105(d), Dr. Perper's report would establish total disability. The problem

is that they don't. The regulations require a physician's statement establishing that the ABG "test results were produced by a chronic respiratory or pulmonary condition." 20 C.F.R. § 718.105(d). Words matter. We must not substitute ours for the ones in the regulations. And no matter how hard one might try, the English language does not permit equating "produced by" the pneumoconiosis with "connected . . . to" the pneumoconiosis. Maj. Op. at 8. Nothing in the record complies with the text of the regulation.

Beyond the textual result, the standard exists for good reason. Terminal hospitalizations can be the result of many factors. As a result, ABG studies from such hospitalizations can produce qualifying results for reasons unrelated to a chronic respiratory or pulmonary condition. This case illustrates this reality. At the time of the ABG studies, Mullins had not only a chronic respiratory or pulmonary condition; he also had pneumonia and respiratory distress syndrome, hypertension, type 2 diabetes mellitus, acute renal insufficiency and medically controlled atrial fibrillation. In fact, Dr. Perper acknowledged that the ABG studies documented "severe hypoxemia and hypercapnia during the terminal 2014 hospitalization *when Mr. Mullins had [contracted] pneumonia and respiratory distress syndrome*." J.A. 615 (emphasis added). So, how do we know whether the ABG test results were produced by a chronic respiratory or pulmonary condition—which would satisfy § 718.105(d)—or whether they were produced by acute pneumonia and respiratory distress syndrome conditions—which would not? We don't. That's why Dr. Perper could not and, to his credit, did not state that the ABG studies' results were produced by a chronic pulmonary or respiratory condition. Critically, without that statement, no matter how well-reasoned as to Mullins' pneumoconiosis and its impact

27

on his employment, Dr. Perper's report fails to satisfy § 718.105(d). So, in my view, the report cannot be relied upon as evidence of total disability at death.

In the Black Lung Benefits Act, and its regulations, Congress decided to tip the scales in favor of the miner. It was perfectly entitled to do that. But that does not mean the miner wins no matter what. When the regulations impose a requirement—as § 718.105(d) does here—we are not free to cast it aside.

I respectfully dissent.